# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL ARROYO, JR., | Case No. 1:18-cv-01682-DAD-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| J.S.T. LLC, et al., | (ECF No. 15) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court is Plaintiff Rafael Arroyo Jr's ("Plaintiff") motion for default judgment filed on August 9, 2019. (ECF No. 15.)[1] The Court attempted to hold a hearing on Plaintiff's motion, however, no parties appeared for the hearing set for September 25, 2019. (ECF No. 20.) Nonetheless, the Court finds the matter suitable for decision based on the record before it, and having considered the moving papers, the declarations and exhibits attached thereto, supplemental briefing, as well as the Court's file, the Court issues the following findings and recommendations.

///

///

///

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1

## I.

## BACKGROUND

### A.    Factual Allegations

Plaintiff bring this action against Defendants J.S.T. LLC ("JST") and Chase, Inc. ("Chase") (collectively "Defendants") alleging violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, and California's Unruh Civil Rights Act, California Civil Code § 51, *et seq.*  (Compl., ECF No. 1.)  Plaintiff, a California resident, is a paraplegic who cannot walk and uses a wheelchair for mobility.  (Id. at ¶ 1.)  In September of 2018, and at the time of the filing of the complaint, Defendant JST owned the real property located at 27574 Bernard Drive, Kettleman City, California (hereinafter the "Property").  (Id. at ¶¶ 2-3.)  In September of 2018, and at the time of the filing of the complaint, Defendant Chase owned the 76 gas station located at the Property (hereinafter the "Gas Station").  (Id. at ¶¶ 4-5.)

The Gas Station is a facility open to the public, a place of public accommodation, and a business establishment.  (Id. at ¶ 11.)  In September of 2018, Plaintiff went to the Gas Station with the intention of availing himself of its good or services, "motivated in part to determine if the [D]efendants comply with the disability access laws."  (Id. at ¶ 10.)  Paths of travel are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station store.  (Id. at ¶ 12.)  Some wheelchair users, including Plaintiff, travel onto the Property from the exterior public sidewalks, however, there was no safe wheelchair accessible route of travel from the boundary of the Property to the accessible entrance of the Gas Station store.  (Id. at ¶ 13.)  The public sidewalks terminate after entering the boundary of the Property leaving no safe path of travel after that point, and Plaintiff was forced to travel in the vehicular drive paths or behind parked cars to gain access to the Gas Station store.  (Id.)  Additionally, the driveways located on the Property had running slopes ranging from about 7% to 8% and cross-slopes ranging from about 6% to 7%.  (Id. at ¶ 14.)

Plaintiff alleges that Defendants have failed to maintain, in operable working condition, those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Property.  (Id. at ¶ 15.)  Plaintiff alleges that he personally

encountered these barriers, and the inaccessible features of the facility denied Plaintiff of full and equal access, causing him difficulties. (Id. at ¶¶ 16-17.) Plaintiff alleges that the Defendants have failed to maintain the features required to provide ready access to persons with disabilities, and that the barriers identified are easily removed without undue difficulty or expense. (Id. at ¶¶ 18-19.) Plaintiff alleges these are the type of barriers identified by the Department of Justice as presumably readily achievable to remove, and that in fact, these barriers are readily achievable to remove. (Id. at ¶ 19.) Additionally, there are numerous alternative accommodations that Defendants could make that would provide a greater level of access if complete removal were not achievable. (Id.)

Plaintiff states he will return to the Gas Station to avail himself of its good or services and to determine compliance with the disability access laws but is currently deterred from doing so because of his knowledge of the existing barriers. (Id. at ¶ 19.) If the barriers are not removed, Plaintiff will be faced with unlawful and discriminatory barriers again. (Id. at ¶ 20.)

By way of relief, Plaintiff seeks: (1) injunctive relief compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act; (2) damages under the Unruh Civil Rights Act which provides for actual damages and a statutory minimum of $4,000.00; and (3) reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205 and California Civil Code § 52. (Id. at 7.)

### B. Procedural History

Plaintiff filed this action on December 11, 2018. (ECF No. 1.) Defendant Chase was served with a summons on February 17, 2019, and the executed summons was filed with the Court on March 4, 2019. (ECF No. 6.) Defendant JST was served with a summons on February 17, 2019, and the executed summons was filed with the Court on March 4, 2019. (ECF No. 6.)

No Defendants filed an answer, responsive pleading, or otherwise appeared in this action. On March 26, 2019, Plaintiff filed requests for entry of default against Defendants. (ECF Nos. 8, 9.) On March 27, 2019, default was entered against Defendants. (ECF Nos. 10, 11.) On July 11, 2019, the Court ordered Plaintiff to either file a motion for default judgment, or a written response showing why this action should not be dismissed for failure to prosecute. (ECF No.

13.)  On August 9, 2019, Plaintiff file the motion for default judgment that is currently before the Court and set a hearing for September 25, 2019.  (ECF No. 15.)

As discussed in greater detail below, _infra_ Section III(A)(2), prior to the scheduled hearing, the Court noticed a discrepancy concerning the proofs of service of the summonses filed in this action, and on September 19, 2019, the Court ordered supplemental briefing to be filed by September 24, 2019, the day prior to the September 25, 2019 hearing on the motion for default judgment.  (ECF No. 16.)  On September 24, 2019, Plaintiff filed a corrected proof of service of summons form for Defendant Chase, along with further documentation by way of an affidavit from the process server demonstrating unsuccessful attempts and the successful attempt of service on Defendant Chase.  (ECF No. 17.)  However, Plaintiff did not file anything in the form of supplemental briefing directly responding to the questions posed in the Court's September 19, 2019 order requiring supplemental briefing, prior to the scheduled hearing.  (ECF No. 17.)  On September 25, 2019, the Court attempted to hold the hearing on Plaintiff's motion, however neither Plaintiff nor Defendants made any appearance.  (ECF No. 20.)  Immediately following the hearing on September 25, 2019, the undersigned issued an order requiring Plaintiff to show cause, within five days of service of the order, why this action should not be dismissed for failure to appear at the hearing and failure to prosecute this action.  (ECF No. 19.)  Prior to the Court's order to show cause was docketed, Plaintiff untimely filed a response to the Court's September 19, 2019 order requiring supplemental briefing, and apologized to the Court for not filing the supplemental briefing by the Court imposed deadline of September 24, 2019.  (ECF No. 18.)  Plaintiff's supplemental briefing, filed after the scheduled hearing time on September 25, 2019, made no mention of the hearing nor any statement explaining why Plaintiff was unable to appear at the hearing, and thus it appears at the time of filing, Plaintiff's counsel was oblivious to the fact that no counsel for Plaintiff made an appearance at the hearing scheduled for that morning on Plaintiff's motion for default judgment.  (ECF No. 18.)  On September 30, 2019, Plaintiff filed a response to the Court's September 25, 2019 order to show cause.  (ECF No. 22.)  On October 2, 2019, the Court discharged the September 25, 2019 order to show cause.  (ECF No. 23.)

## II.

## LEGAL STANDARD FOR DEFAULT JUDGMENT

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)). Pursuant to Federal Rules of Civil Procedure 55, obtaining a default judgment is a two-step process. Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise. Fed. R. Civ. P. 55(a). After entry of default, a plaintiff can seek entry of default judgment. Fed. R. Civ. P. 55(b). Federal Rule of Civil Procedure 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
>> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
>>> (A) conduct an accounting;
>
>>> (B) determine the amount of damages;
>
>>> (C) establish the truth of any allegation by evidence; or
>
>>> (D) investigate any other matter.

Fed. R. Civ. P. 55.

The decision to grant a motion for entry of default judgment is within the discretion of the court. PepsiCo, Inc. v. California Security Cans, 238 F.Supp. 1172, 1174 (C.D. Cal. 2002). The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive

claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied."). Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted). The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

### III.

### DISCUSSION

Plaintiff seeks default judgment and requests injunctive relief, monetary damages pursuant to statute, attorney's fees, and costs. (Compl. at 7; Pl.'s Mem. P. & A. Supp. Appl. Default J. ("Mot") 7, ECF No. 15-1.) The Court first determines whether the Court properly has jurisdiction in this matter, and then turns to the Eitel factors to determine whether default judgment should be entered.

**A.    Jurisdiction**

1.    Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000). Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.' "A case 'arises under' federal law either

where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983) (citations omitted)). "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Republican Party of Guam, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's related state law claims brought under California's Unruh Civil Rights Act.

## 2. Service of Process on Defendants

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment. See J & J Sports Prods., Inc. v. Singh, No. 1:13-CV-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").

The Federal Rules of Civil Procedure provide for two ways to effectuate service on a corporation. Pursuant to Federal Rule of Civil Procedure 4(h), a corporation must be served "in a manner prescribed by Rule 4(e)(1) for serving an individual; or . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent or any agent, authorized by appointment or by law to receive service of process." Rule 4(e)(1) provides that service may be effectuated by following the law of the state in which the service is to be made. Rule 4 is flexible and should be liberally construed so long as it gives the party to be served sufficient notice of the complaint. Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988).

Under California law, service on a corporation may be made by service on the person designated as agent for service of process or "the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or a person authorized by the corporation to receive service of process." Cal. Code. Civ. P. §§ 416.10(a)-(b); see also Cal. Corp. Code § 17701.16. Service on an unincorporated business may also be made through service on the authorized agent. Cal. Civ. Proc. Code § 416.40.

As noted above in the Court's summary of the procedural history in this action, supra Section I(B), the Court found certain issues concerning the proofs of service of the summonses filed in this action by Plaintiff and ordered Plaintiff to file supplemental briefing prior to the scheduled hearing on the motion for default judgment. According to the originally filed proofs of service of the summonses, service was alleged to have been effectuated on Defendant Chase through personal service on Chase's agent on February 17, 2019 at 6:02 p.m., and on Defendant JST through personal service on JST's agent on February 17, 2019 at 6:02 p.m. (ECF Nos. 6, 7.) Thus, the information apparent on the face of the documents purports to demonstrate that service on Defendants' agents was completed by the same process server on two different agents of Defendants at two different addresses at precisely the same time, a seemingly impossible feat. (Id.) On September 19, 2019, the Court ordered Plaintiff to file supplemental briefing to address this inconsistency by September 24, 2019. (ECF No. 16.)

On September 24, 2019, Plaintiff filed a proof of service of summons form, signed on September 23, 2019, by the same process server as the original filed summonses, which appears to demonstrate service was effectuated on Defendant Chase's agent for service of process on February 17, 2019, at 6:26 p.m., rather then 6:02 p.m. as reflected in the originally filed proof of service. (ECF No. 17 at 1-2.) Additionally, an affidavit of service, signed September 24, 2019, was also attached which demonstrates the process server attempted service five times unsuccessfully between January 10, 2019, and January 19, 2019, prior to successfully completing service on Chase's agent, Bob Shiralian, on February 17, 2019, at 6:26 p.m. (ECF No. 17 at 3.) On September 25, 2019, following the scheduled hearing on Plaintiff's motion for

default judgment which Plaintiff failed to make an appearance at, Plaintiff untimely filed a formal response to the Court's September 19, 2019 order requiring supplemental briefing by way of supplemental briefing and a declaration of Plaintiff's counsel. (ECF No. 18; Decl. Dennis Price ("Price Decl."), ECF No. 18-1.) Plaintiff submits that the error in the original proof of service demonstrating service upon Defendant Chase's agent Bob Shiralian was due to a drafting error on the form, and states a corrected proof of service form was filed with the Court on September 24, 2019, which indicates service was effectuated at 6:26 p.m. rather than 6:02 p.m. (ECF Nos. 17, 18) Plaintiff argues counsel thoroughly investigated the issue, and found that the investigation indicates that proper service was obtained, and that the defect was only typographical in nature as demonstrated by corroborating contemporaneous evidence attached to the supplemental briefing. (ECF No. 18 at 3; Price Decl. ¶¶ 2-3; ECF No. 18-2.) The service forms submitted as exhibits appear to show handwritten notes confirming multiple unsuccessful attempts at service on both of Defendants' agents on the same dates but different times, along with successful service effectuated on Defendant Chase's agent at 6:02 p.m. on February 17, 2019, and on Defendant JST's agent at 6:26 p.m. on February 17, 2019. (ECF No. 18-2 at 1-2.) The notes match the information contained in the corrected proof of service form filed September 24, 2019 for Defendant Chase. (ECF No. 17.) Plaintiff's counsel declares that: (1) the service documents that were filed on Chase and JST appear to have included a typo; (2) that he reviewed the notes attached with the service information from the process server and the hand written notes indicate service was completed on Bob Shiralian at 6:26 p.m.; (3) that it appears the proof of service was hastily drafted and duplicated the time from the Chase proof of service; and (4) "[t]hough [he is] convinced that the service here was proper, despite the inaccurate document that was filed, [he has] conveyed the gravity of filing accurate proofs of service." (Price Decl. ¶ 3.)

The Court is greatly concerned with the discrepancy in the original filed service documents, especially given Plaintiff is currently seeking default judgment against these Defendants who have not yet appeared in the action. Nonetheless, the Court finds the supplemental briefing and affidavits adequately explain the discrepancy and sufficiently

demonstrate that the Defendants were served with summonses in this action.[2]  The Court thus finds service has been effectuated on Defendants in this matter and shall now proceed to consideration of whether the Eitel factors weigh in favor of granting Plaintiff's motion for default judgment.

**B.     The Eitel Factors Weigh in Favor of Granting Default Judgment**

The Court finds that consideration of the Eitel factors weighs in favor of granting default judgment in favor of Plaintiff.

1.     Prejudice to Plaintiff if Default Judgment is Not Granted

Plaintiff filed this action over ten months ago on December 11, 2018.  (ECF No. 1.)  If default judgment is not entered, Plaintiff, a disabled individual, is effectively denied a remedy for the violations of the disability statutes alleged until such time as the Defendants in this action decide to appear in the litigation, which may never occur.  Both Defendants named in this action were served, and the proofs of service of the summonses were returned executed and filed with the Court, and the inconsistencies with the originally filed summonses were addressed through supplemental briefing to the satisfaction of the Court as explained above, supra Section III(A)(2). (ECF Nos. 6, 7, 17, 18.)  Defendants have not filed an answer, a motion to dismiss, or otherwise appeared in the action, and Defendants failed to file any opposition to the instant motion for default judgment, and failed to make an appearance at the September 25, 2019 hearing held on

---

[2]  Additionally, and although less concerning than the first issue but worth noting given the previously discussed inconsistency, while the names of the agents for service of process purported to be served correctly reflect the names of the agents for these entities as registered with the California Secretary of State, the addresses where they were served do not match the addresses registered with the California Secretary of State.  (ECF Nos. 6, 7.)  According to the records filed with the California Secretary of State, Defendant Chase's agent for service of process is Bob Shiralian at 3754 W. Holland Ave., Fresno, California 93722, and Defendant JST's agent for service of process is Stephen Shehadey at 405 North Palm Ave., Fresno, California 93701.  According to the service documents, Defendant Chase's agent Bob Shiralian was served at 2563 W. Lake Van Ness Cir., Fresno, California 93711 (ECF No. 6), and Defendant JST's agent Stephen Shehadey was served at 928 E. Windsor Cir., Fresno, California 93720 (ECF No. 7).  Given the other inconsistency concerning the time the agents were served, the Court requested supplemental briefing on this issue as well.  (ECF No. 16.)  In Plaintiff's supplemental briefing, Plaintiff explains that service was attempted at both agents' business addresses registered with the state of California, however such attempts were unsuccessful and individuals at such addresses informed the process server that these individuals were "unknown."  (ECF No. 18 at 2.)  Accordingly, the process server decided to attempt service at alternate addresses that research had uncovered.  (ECF No. 18 at 2-3.)  The Court notes that the affidavit of service filed September 24, 2019, as well as the handwritten notes submitted September 25, 2019, both reflect these first unsuccessful service attempts at the registered addresses prior to attempting service at the other addresses.  (ECF No. 17 at 3; ECF No. 18-2.)  The Court is satisfied with Plaintiff's explanation addressing the Court's concern.

the instant motion.  (ECF No. 20.)

For these reasons, the Court finds Plaintiff would be substantially prejudiced if default judgment is not granted and finds this <u>Eitel</u> factor weighs in favor of granting default judgment in favor of Plaintiff.  <u>See</u> <u>Vogel v. Rite Aid Corp.</u>, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).

### 2.     The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

The second and third <u>Eitel</u> factors instruct the Court to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself.  It is appropriate for the Court to analyze these two factors together.  <u>AMUR Equip. Fin., Inc. v. CHD Transp. Inc.</u>, No. 117CV00416AWISKO, 2017 WL 5477379, at *5 (E.D. Cal. Nov. 15, 2017); <u>F.D.I.C. v. Quest, F.S., Inc.</u>, No. SACV 10-00710 DOC, 2011 WL 2560428, at *2 (C.D. Cal. June 27, 2011).  In doing so, the Court looks to the complaint to determine if the allegations contained within are sufficient to state a claim for the relief sought.  <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).

### a.     Americans with Disabilities Act

One of the purposes of the ADA is "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(2). "Congress enacted the statute on the premise that discrimination against the disabled is 'most often the product, not of invidious animus, but rather the thoughtlessness and indifference—of benign neglect.' "  <u>Cohen v. City of Culver City</u>, 754 F.3d 690, 694 (9th Cir. 2014) (quoting <u>Alexander v. Choate</u>, 469 U.S. 287, 295 (1985)).  "Therefore, the ADA proscribes not only 'obviously exclusionary conduct,' but also 'more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' full and equal enjoyment' of public places and accommodations."  <u>Cohen</u>, 754 F.3d at 694 (quoting <u>Chapman v. Pier 1 Imps. (U.S.) Inc.</u>, 631 F.3d 939, 945 (9th Cir.2011)).  "An ADA plaintiff suffers a legally cognizable injury under the ADA if he is 'discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any place of public accommodation.' "  <u>Chapman</u>, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a)) (alteration in original).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). Discrimination under the ADA is defined to include "a failure to remove architectural barriers, . . . in existing facilities, . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). To state a claim for discrimination under the ADA because of denial of public accommodations due to "the presence of architectural barriers in an existing facility, a plaintiff must allege and prove that: '(1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable.' " Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

i.     Plaintiff has Established he is Disabled under the ADA

Plaintiff must allege that he is disabled under the ADA. Molski, 481 F.3d at 730. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include walking and standing. 42 U.S.C. § 12102(2)(A). Plaintiff alleges he is a paraplegic, has severe mobility impairments, cannot walk, and uses a wheelchair for mobility. (Mot. 8; Decl. Rafael Arroyo Jr. Supp. Pl.'s Appl. Default J. ("Arroyo Decl.") ¶ 2, ECF No. 15-5; Compl. ¶ 1.) Taking the allegations as true for purposes of default judgment, Plaintiff has adequately established this element of his ADA discrimination claim.

ii.     Plaintiff has Established Defendants Own, Operate, or Lease a Public Accommodation

Plaintiff must allege that each Defendant "is a private entity that owns, leases, or operates a place of public accommodation." Molski, 481 F.3d at 730. Plaintiff is correct that gas stations are expressly defined as a form of public accommodation under the ADA. See 42 U.S.C. § 12181(7)(F). Taking the allegations as true for purposes of default judgment, Plaintiff has

1  adequately established that the Gas Station is a public accommodation subject to the ADA, that

2  Defendant JST owns the Property where the Gas Station is located, and Defendant Chase owns the

3  Gas Station business located on the Property.  (Compl. ¶¶ 2-5, 11; Decl. Dennis Price Supp. Pl.'s

4  Appl. Default J. ("Price Decl.") ¶¶ 3-4, ECF No. 15-4; Mot., Ex. 5, ECF No. 15-8.)

5          iii.    Plaintiff was Denied Public Accommodations due to an Architectural Barrier

6          Plaintiff must allege and prove that he was denied public accommodations by a defendant

7  because of his disability.  Molski, 481 F.3d at 730.  Here, Plaintiff may establish such denial by

8  demonstrating the facility presents an architectural barrier prohibited under the ADA, and the

9  removal of the barrier is readily achievable.  Hubbard, 433 F. Supp. 2d at 1138.

10         1)      Architectural Barrier

11         Congress entrusted the Attorney General with promulgating the implementing regulations

12  for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42

13  U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent

14  with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance

15  Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities

16  ("ADAAG") in 1991.  Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The

17  Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out

18  the technical structural requirements of places of public accommodation and are applicable during

19  the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).

20         Plaintiff alleges that the running slopes and the cross slopes of the Gas Station's driveway

21  exceed the ADAAG's requirement that an accessible path of travel have running slopes of 5% or

22  less, and cross slopes of 2.033% or less.  (Mot. 12, citing 36 C.F.R., Part 1191, Appendix D §§

23  402.2, 403.3.)

24         Under the ADAAG, "[a]t least one accessible route shall be provided within the site from .

25  . . public streets and sidewalks; and public transportation stops to the accessible building or facility

26  entrance they serve."  36 C.F.R. § Pt. 1191, App. C § F206.2.1.  "The running slope of walking

27  surfaces shall not be steeper than 1:20 [5%]," and "[t]he cross slope of walking surfaces shall not

28

be steeper than 1:48 [2.083%].”[3]  36 C.F.R. § Pt. 1191, App. D § 403.3; see also id. at § 402.2 ("Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20 [5%].").

In the complaint, Plaintiff alleges that in September of 2018, he went to the Gas Station and experienced that wheelchair users such as himself travel onto the Property from the exterior public sidewalks, however, there was no safe wheelchair accessible route of travel from the boundary of the Property to the accessible entrance of the Gas Station store.  (Compl. ¶ 13.)  Plaintiff found that the public sidewalks terminated after entering the boundary of the Property leaving no safe path of travel after that point, and Plaintiff was forced to travel in the vehicular drive paths or behind parked cars to gain access to the Gas Station store.  (Id.)  Additionally, Plaintiff found the driveways located on the Property had running slopes ranging from about 7% to 8% and cross-slopes ranging from about 6% to 7%.  (Id. at ¶ 14.)  In a supporting declaration, Plaintiff confirms that when he visited the Gas Station, he discovered there was no pedestrian path of travel from the perimeter to the Gas Station store entrance, and the only path of travel for him and other pedestrians was to travel in the driveway and vehicular drive lanes.  (Arroyo Decl. ¶ 4.)  Plaintiff confirms the Property had "significant slopes from the sidewalk to the store entrance that gave [him] difficulty and frustration."  (Id. at ¶ 5.)

On December 4, 2018, Plaintiff's investigator, Zion Sapien ("Investigator Sapien"), visited the Gas Station to assess the location and take photographs.  (Decl. Zion Sapien Supp. Pl.'s Appl. Default J. ("Sapien Decl.") ¶ 2, ECF No. 15-6.)  Investigator Sapien observed there were wide driveway entrances from the public streets and sidewalks but no pedestrian path of travel was provided, and all pedestrians had to enter in the driveway and travel within the vehicular drive lanes to get to the Gas Station store.  (Id. at ¶ 3.)  Investigator Sapien observed "the dramatic slopes that [Plaintiff] complained of," and "[u]sing a digital level that [Investigator Sapien] calibrated that very day," calculated that one driveway entrance had a 7.2% running slope and an 8.0% cross slope, while the other driveway had an 8.3% running slope and a 5.7% cross slope.  (Id.

---

[3]  The Court notes that although Plaintiff's briefing states that the cross slopes cannot be greater than 2.033%, the correct conversion of 1:48 to a percent is 2.083%.

at ¶ 4.)   Investigator Sapien took photographs of the facilities at the Gas Station, including photographs of the digital level readings while placed on the driveways.  (Sapien Decl. ¶ 5; Mot., Ex. 4, ECF No. 15-7 at 1-19.)   Plaintiff reviewed the photographs taken by investigator Zion Sapien attached to the motion for default judgment, and confirms they are a true and correct depiction of the conditions of the paths of travel at the Gas Station store on the date Plaintiff visited.  (Arroyo Decl. ¶ 6.)

The Court notes that the close-up photographs of the digital level show readings of 7.2%, 8.0%, and 8.3%, which correlate with the above numbers in Investigator Sapien's Declaration, in addition to close-up photographs of readings of 6.8%, and 7.0%, not referenced in the declaration. (ECF No. 15-7 at 10, 12, 14, 16, 19.)  Although difficult to read, a photograph taken farther away does appear to show a digital level reading of 5.7%, which correlates to the final number referenced in Investigator Sapien's declaration.  (ECF No. 15-7 at 17.)

In briefing, Plaintiff notes there is an exception to the general requirement that a vehicular way cannot be considered as part of an accessible route between site arrival points and the facility and provides: "An accessible route shall not be required between site arrival points and the building or facility entrance if the only means of access between them is a vehicular way not providing pedestrian access."  36 C.F.R. § Pt. 1191, App. C § 206.2.1.  Plaintiff highlights the DOJ's guidance emphasizes this is a "relatively rare" exception:

> Commenters urged the Department to eliminate the exception that exempts site arrival points and accessible facilities from the accessible route requirements where the only means of access between them is a vehicular way not providing pedestrian access. The Department declines to accept this recommendation because the Department believes that its use will be limited. If it can be reasonably anticipated that the route between the site arrival point and the accessible facilities will be used by pedestrians, regardless of whether a pedestrian route is provided, then this exception will not apply. It will apply only in the relatively rare situations where the route between the site arrival point and the accessible facility dictates vehicular access—for example, an office complex on an isolated site that has a private access road, or a self-service storage facility where all users are expected to drive to their storage units.

28 C.F.R. § Pt. 36, App. B.  The Court finds no immediately apparent grounds to challenge Plaintiff's argument that this exception is not applicable here.  (Mot. 10-11.)

Based upon the foregoing allegations presented by Plaintiff in his complaint and supported

1 by declaration and investigation, the Court finds Plaintiff has sufficiently alleged and demonstrated

2 the presence of architectural barriers present at the Property and Gas Station which violate the

3 ADA, when the allegations are taken as true for purposes of default judgment.

4         2)      Whether Removal of the Architectural Barrier is Readily Achievable

5      Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable

6 and able to be carried out without much difficulty or expense." 42 U.S.C § 12181(9). Factors to

7 be considered in determining whether such removal is readily achievable include: "(A) the nature

8 and cost of the action needed under this chapter; (B) the overall financial resources of the facility

9 or facilities involved in the action; the number of persons employed at such facility; the effect on

10 expenses and resources, or the impact otherwise of such action upon the operation of the facility;

11 (C) the overall financial resources of the covered entity; the overall size of the business of a

12 covered entity with respect to the number of its employees; the number, type, and location of its

13 facilities; and (D) the type of operation or operations of the covered entity, including the

14 composition, structure, and functions of the workforce of such entity; the geographic separateness,

15 administrative or fiscal relationship of the facility or facilities in question to the covered entity."

16 Id. Federal regulations provide examples of readily achievable steps to remove barriers including:

17 installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a

18 turnstile or providing an alternative accessible path, and creating designated accessible parking

19 spaces, among other examples. 28 C.F.R. § 36.304(b).

20      Plaintiff argues that the question of whether removal of a barrier is readily achievable is an

21 affirmative defense that is waived unless raised, Wilson v. Haria & Gogri Corp., 479 F. Supp. 2d

22 1127, 1133 n.7 (E.D. Cal. 2007), and that where a defendant fails to appear and answer in an

23 action, a plaintiff's allegation in the complaint regarding the achievability of barrier removal is

24 sufficient to establish that removal of the barrier is readily achievable in a default judgment setting,

25 Vogel, 992 F. Supp. 2d at 1011. (Mot. 12.) The Court agrees.

26      The Ninth Circuit has not decided whether the plaintiff or defendant carries the burden of

27 proving that removal of an architectural barrier is readily achievable, and the majority of district

28 courts in the circuit have applied the Tenth Circuit's burden-shifting framework developed in

1  Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship I, 264 F.3d 999 (10th Cir.

2  2001). See Moore v. Robinson Oil Corp., 588 F. App'x 528, 530 (9th Cir. 2014); Vogel, 992 F.

3  Supp. 2d at 1010; Ngoc Lam Che v. Boatman-Jacklin, Inc., No. 18-CV-02060-NC, 2019 WL

4  3767451, at *2 (N.D. Cal. Aug. 9, 2019). Under the Tenth Circuit's framework, the plaintiff bears

5  the initial burden of production to present evidence that a suggested method of barrier removal is

6  readily achievable, and then the burden shifts to the defendant who bears the ultimate burden of

7  persuasion regarding the affirmative defense that the suggested method is not readily achievable.

8  Vogel, 992 F. Supp. 2d at 1010 (citing Colorado Cross, 264 F.3d at 1006).

9       Plaintiff alleges that the Defendants have failed to maintain the features required to provide

10 ready access to persons with disabilities, and that the barriers identified are easily removed without

11 undue difficulty or expense. (Compl. ¶¶ 18-19.) Plaintiff alleges these are the type of barriers

12 identified by the Department of Justice as presumably readily achievable to remove, and that in

13 fact, these barriers are readily achievable to remove. (Id. at ¶ 19.) Additionally, Plaintiff argues

14 there are numerous alternative accommodations that Defendants could make that would provide a

15 greater level of access if complete removal were not achievable. (Id.)

16      Plaintiff's allegation that the removal of the barriers is readily achievable is sufficient to

17 satisfy his burden of production for purposes of default judgment. See Vogel, 992 F. Supp. 2d at

18 1011 (allegation that removal of barrier readily achievable sufficient for default judgment);

19 Johnson v. Hall, No. 2:11-CV-2817-GEB-JFM, 2012 WL 1604715, at *3 (E.D. Cal. May 7, 2012)

20 (same); Johnson v. Beahm, No. 2:11-CV-0294-MCE-JFM, 2011 WL 5508893, at *3 (E.D. Cal.

21 Nov. 8, 2011) (same). Defendants have failed to meet their burden because they have failed to

22 appear and present any defense in this matter.

23      For purposes of default judgment, the Court accepts Plaintiff's allegations as true and finds

24 Plaintiff has sufficiently established that removal of the architectural barriers he encountered is

25 readily achievable.

26      **b.    California State Law Claims**

27      Plaintiff also brings a state law claim for violation of the California's Unruh Civil Rights

28 Act. (Compl. ¶¶ 31-34.) The Unruh Act provides that "[a]ll persons within the jurisdiction of this

state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(a).  Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007); Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the Unruh Civil Rights Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Civil Rights Act.  Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section.").

As Plaintiff has stated a cause of action entitling him to relief under the ADA, Plaintiff has also stated a claim entitling him to relief under the Unruh Act.  See Vogel, 992 F. Supp. 2d at 1011-12; Villegas v. Beverly Corner, LLC, No. 216CV07651CASSSX, 2017 WL 3605345, at *5 (C.D. Cal. Aug. 18, 2017); Johnson v. Singh, No. 2:10-CV-2547 KJM JFM, 2011 WL 2709365, at *1–4 (E.D. Cal. July 11, 2011).  For all of the above stated reasons, the Court finds the second and third Eitel factors weigh in favor of granting default judgment in favor of Plaintiff on the ADA claim and the Unruh Civil Rights Act claim.

        3.    The Sum of Money at Stake in the Action

The sum of money at stake in this action also weighs in favor of granting default judgment.  Default judgment is disfavored where large amounts of money are involved, or the award would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Under the third Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.").  In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorney's fees in the amount of $4,380.00, and costs of $650.00, for a total award of $9,030.00.  (ECF No. 15 at 2; Compl. 7; Mot. 14; ECF No.

15-3 at 2; ECF No. 15-4 at 8.)  This is not an excessive amount of money, nor does it seem unreasonable in light of the allegations contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12–cv–00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not a relatively large sum of money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV S–08–1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of $12,000.00 for ADA violations on default judgment was "relatively small award of damages").

For these reasons, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendants.

4.      The Possibility of a Dispute Concerning Material Facts

The next Eitel factor considers the possibility of dispute concerning material facts.  As discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and the Unruh Act by demonstrating his encountering of architectural barriers at the Property and Gas Station.  Defendants have failed to appear and therefore have admitted all material facts alleged in Plaintiff's complaint.  See Garamendi, 683 F.3d at 1080; PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.").  As the Court found above, Defendants were properly served and failed to appear.  Thus, there is no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendants' default.

Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendants.

5.      Whether the Default Was Due to Excusable Neglect

Defendants have failed to file a responsive pleading or otherwise appear in the action. Defendants were served with the requests for entry of default and the motion for default judgment.

(ECF Nos. 8, 9, 15.)[4]  Defendants did not file any opposition to the motion for default judgment and did not make an appearance at the hearing on the motion for default judgment.  Given these facts, there is no indication or evidence that the failure to respond was due to excusable neglect.  See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) ("The default of defendant . . . cannot be attributed to excusable neglect.  All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against both Defendants.

6.  The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the Defendants' failure to appear has made a decision on the merits impossible at this juncture.  Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits.  See PepsiCo, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

Accordingly, the Court finds the policy favoring decisions on the merit does not preclude entering default judgment against Defendants under these circumstances.

///

---

[4]  The Court notes that the proofs of service indicate that the motion for default judgment and the requests for entry of default were served via postal mail to the agents for service of process for the Defendants at the same addresses that the summonses were served at.  (ECF Nos. 8-2, 9-2, 15-9.)  The Court also highlights that the proofs of service indicate that the documents were served electronically through the Court's CM/ECF system and subsequently emailed to the recipients, however given the Defendants have not made an appearance in the action, such electronic service would not have been effectuated, and there is no indication that the requests were served directly to an any email address of Defendants by Plaintiff.  (Id.)

7. <u>The Eitel Factors Weigh in Favor of Granting Default Judgment</u>

Based on the foregoing, the Court finds that the <u>Eitel</u> factors weigh in favor of granting default judgment and recommends that Plaintiff's motion for default judgment be granted. The Court now turns to the types of relief requested by Plaintiff.

**C.    Relief Requested**

In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorney's fees in the amount of $4,380.00, and costs of $650.00, for a total award of $9,030.00. (ECF No. 15 at 2; Compl. 7; Mot. 14; ECF No. 15-3 at 2; ECF No. 15-4 at 8.)

1. <u>Injunctive Relief</u>

Plaintiff seeks an injunction compelling Defendants to comply with the ADA and the Unruh Civil Rights Act by providing accessible paths of travel at the Property and Gas Station. The ADA provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" by the ADA. 42 U.S.C. § 12188(a)(2). Pursuant to federal and state law, Plaintiff is entitled to the removal of those architectural barriers which he encountered on his visit to the facility that violated the ADA. Therefore, an injunction should issue requiring Defendants to ensure there are accessible paths of travel in compliance with the Americans with Disabilities Act Accessibility Guidelines.

2. <u>Statutory Damages</u>

Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the California Unruh Civil Rights Act. The Unruh Act provides for minimum statutory damages of $4,000.00 for each violation. Cal. Civ. Code § 52(a). Under the Unruh Act, statutory damages may be recovered if a violation of one or more construction related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion. Cal. Civ. Code § 55.56(a). A plaintiff is denied full and equal access only when they personally encountered the violation on a specific occasion. Cal. Civ. Code § 55.56(b). A litigant need not prove any actual damages to recover statutory damages of $4,000.00. <u>Molski</u>, 481 F.3d at 731.

As discussed above, Plaintiff sufficiently alleged violation of the ADA which established a

violation of the Unruh Act, and thus the Court finds that Plaintiff is entitled to statutory damages in the amount of $4,000.00.

### 3. Attorney's Fees and Costs

Plaintiff is requesting attorney's fees in the amount of $4,380.00 and costs in the amount of $650.00. (ECF No. 15-4 at 8-9.) Pursuant to 42 U.S.C. § 12205, the party that prevails on a claim brought under the ADA may recover "a reasonable attorney's fee, including litigation expenses," at the discretion of the Court. "[U]nder federal fee shifting statutes the lodestar approach is the guiding light in determining a reasonable fee." Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and citations omitted). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary. Second, a court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar. The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.

Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations and punctuation omitted).

Under the lodestar method, the court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work. Antoninetti, 643 F.3d at 1176. The district court has the discretion to make adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but concise reason for the fee award. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992). The lodestar amount is to be determined based upon the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 896 (1984).

#### a. Reasonable hourly rate

Counsel Mark Potter is founder of the Center for Disability Access, has devoted 95% of his

practice to disability issues for twenty-five years, and is requesting $425.00 per hour for his billings.  (Price Decl. ¶ 8.)  Counsel Russell Handy, also seeking $425.00 per hour, has extensive experience in disability law over the past twenty years, clerked for the Ninth Circuit Court of Appeals, and has prosecuted over a thousand ADA cases, including over forty trials.  (Price Decl. ¶ 9.)  Counsel Phyl Grace has nearly twenty-four years of experience with an exclusive focus on disability law over the past ten years, and has requested $425.00 per hour.  (Price Decl. ¶ 10.) Attorneys Christina Carson and Dennis Price each seek $350.00 per hour, and both graduated law school in 2011 and have nearly eight years of experience.  (Price Decl. ¶¶ 11-12.)

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of the Eastern District of California.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.  Plaintiff has presented no evidence regarding the reasonableness of the fees in this district other than stating that the requested billing rates have "been granted in scores of recent federal court rulings, granting default judgment applications."  (Price Decl. ¶¶ 8-12.)  Thus, the Court relies on its own knowledge of customary legal local rates and experience with the legal market in setting a reasonable hourly rate.  Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011).

In the Fresno Division of the Eastern District of California, across a variety of types of non-ADA litigation generally, attorneys with experience of twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of experience.  See In re Taco Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839 (E.D. Cal. 2016) (noting attorneys in Fresno Division with twenty or more years of experience are awarded $350.00 to $400.00 per hour, and attorneys with less than fifteen years of experience are

awarded $250.00 to $350.00 per hour); <u>Garcia v. FCA US LLC</u>, No. 1:16-CV-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience; $250.00 per hour to attorney with ten years of experience; $225.00 per hour to attorneys attorney with five years of experience; and $175.00 per hour to attorney with less than five years of experience); <u>Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc.</u>, No. 1:18-CV-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorney with over twenty years of experience the $325.00 per hour requested, the $300.00 per hour requested by attorney with nearly twenty years of experience, and attorney with seven years of experience the requested $250.00 per hour); <u>TBK Bank, SSB v. Singh</u>, No. 1:17-CV-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), <u>report and recommendation adopted</u>, No. 117CV00868LJOBAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with over thirty-five years of experience $400.00 per hour, attorney with twenty years of experience $350.00 per hour; and attorney with ten years of experience $300.00 per hour); <u>Roach v. Tate Publ'g & Enterprises</u>, No. 1:15-CV-00917-SAB, 2017 WL 5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding attorney with sixteen years of experience $325.00 per hour in copyright action); <u>Sanchez w. Frito-Lay, Inc.</u>, No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015) (in a wage and hour class action finding reasonable rate of $350.00 per hour for attorneys with more than twenty years of experience and $275.00 per hour for attorney with fourteen years of experience).

Specifically, in the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within the roughly preceding two-year period. <u>See</u> <u>Cervantes v. Vargas</u>, No. 117CV00923LJOSKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); <u>Block v. Christian</u>, No. 1:16–cv–00650–LJO–SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases); <u>Trujillo v. Lakhani</u>, No. 117CV00056LJOSAB, 2017 WL

1831942, at *8 (E.D. Cal. May 8, 2017) (finding $300.00 per hour to be reasonable rate both for attorney with over twenty-four years of experience in general litigation and twelve years with ADA actions and attorney with sixteen years of experience in civil rights litigation and eight years of ADA experience); Block v. Starbucks Corp., No. 115CV00991DADCKD, 2018 WL 4352906, at *7 (E.D. Cal. Sept. 11, 2018) (same); Trujillo v. Singh, No. 1:16–cv–01640–LJO–EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017) (finding $300.00 per hour to be a reasonable hourly rate for an attorney with over fifteen years experience); Tarango v. City of Bakersfield, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *6 (E.D. Cal. Nov. 20, 2017) (awarding $250.00 per hour to attorney with less than six-years of experience but extensive experience in disability discrimination, $275.00 per hour for attorney with eight years of experience, and $300.00 for attorney with ten years of experience); O'Campo v. Ghoman, No. 208CV1624KJMDBPS, 2017 WL 3225574, at *7 (E.D. Cal. July 31, 2017) (noting various cases in Sacramento awarding $300.00 per hour for attorneys with over twenty years ADA experience, and awarding $300.00 per hour in ADA action in Sacramento division for both an attorney with over thirty years of experience, and attorney with nearly twenty years of experience).

Specifically, counsel Russell Handy was awarded $300.00 per hour rather than the requested $425.00 per hour in two ADA cases in 2017, based on nineteen years of experience and practice devoted exclusively to disability law with over forty trials. Anglin v. Barron, No. 117CV00974AWIJLT, 2017 WL 5713375, at *8 (E.D. Cal. Nov. 28, 2017); Johnson v. Patel, No. 217CV00573KJMCKD, 2017 WL 3953949, at *5 (E.D. Cal. Sept. 8, 2017).

Accordingly, the Court recommends that Plaintiff receive $300.00 per hour for the services of Mark Potter, Russell Handy, and Phyl Grace, and recommends that Plaintiff receive $250.00 per hour for the services of Christina Carson and Dennis Price.

**b.      Reasonable number of hours**

Counsel Mark Potter expended 0.9 hours meeting with Plaintiff for initial case development, and 2.2 hours for a site visit and initial investigation. (ECF No. 15-4 at 9.) The Court finds that 3.1 hours is reasonable for counsel Mark Potter's work on this action.

Counsel Russel Handy expended 0.8 hours working with Investigator Sapien and reviewing

his reports, and 1.8 hours performing research of public records to identify responsible defendants and determining previous modifications to property for Title 24 purposes. (Id.) The Court finds that 2.6 hours is reasonable for counsel Russell Handy's work on this action.

Counsel Phyl Grace expended 1.5 hours reviewing court filings and drafting minor court filings, including the requests for entry of default. (Id.) The Court finds that 1.5 hours is reasonable for counsel Phyl Grace's work on this action.

Counsel Christina Carson expended 0.7 hours drafting the complaint and related documents. (Id.) The Court finds that 0.7 hours is reasonable for counsel Christina Carson's work on this action.

Counsel Dennis Price expended 2.9 hours reviewing and drafting court filings, including drafting the application for default judgment and associated declarations. (Id.) The Court finds that 2.9 hours is reasonable for counsel Dennis Price's work on this action.

Finally, the Court notes that included in the billing spreadsheet is an entry for a J. McAllister for 0.2 hours at a rate of $300.00 per hour. (Id.) Plaintiff has submitted no information regarding this entry as to who J. McAllister is, whether they are an attorney, and how much experience they have. The Court does not include such billing in its recommended attorney's fee calculation below.

### c.    Reasonable Attorney's Fee Award

The Court finds that: (1) counsel Mark Potter reasonably expended 3.1 hours in this action at a reasonable rate of $300.00 per hour, for a total of $930.00; (2) counsel Russel Handy reasonably expended 2.6 hours in this action at a reasonable rate of $300.00 per hour, for a total of $780.00; (3) counsel Phyl Grace reasonably expended 1.5 hours in this action at a reasonable rate of $300.00 per hour, for a total of $450.00; (4) counsel Christina Carson reasonably expended 0.7 hours at a reasonable rate of $250.00 per hour, for a total of $175.00; and (5) counsel Dennis Price reasonably expended 2.9 hours at a reasonable rate of $250.00 per hour, for a total of $725.00.

Accordingly, the Court recommends that Plaintiff be awarded attorney's fees in the amount of $3,060.00.

///

**d.     Costs**

Both the ADA and Unruh Act authorize the award of costs for an action.  See 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Plaintiff seeks costs of $200.00 for an investigator, $400.00 for filing fees, and $50.00 for service expenses.  (ECF No. 15-4 at 8.)  The Court finds these expenses to be reasonable and recommends awarding Plaintiff a total of $650.00 in costs.

**IV.**

**CONCLUSION AND RECOMMENDATION**

The Eitel factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

Based upon the foregoing, the Court HEREBY RECOMMENDS that:

1.     Plaintiff's motion for default judgment be GRANTED;

2.     Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

3.     Plaintiff be AWARDED attorney's fees in the amount of $3,060.00;

4.     Plaintiff be AWARDED costs in the amount of $650.00; and

5.     Plaintiff be GRANTED an injunction requiring Defendants to provide disability access by removing architectural barriers and providing accessible paths of travel at 27574 Bernard Drive, Kettleman City, California, in accordance with the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

///
///
///
///
///
///
///
///

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Further, Plaintiff is HEREBY ORDERED to serve a copy of this findings and recommendations on Defendants within three (3) days of entry.

IT IS SO ORDERED.

Dated:   **October 3, 2019**

UNITED STATES MAGISTRATE JUDGE